**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ray THOMAS, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wayne Graham MASON,**
**Defendant–Appellant.**

**Nos. 89–5135, 89–5136 and 89–5549.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1989.

Decided April 5, 1990.

David B. Smith (Gregory B. English, on brief), English & Smith, Alexandria, Va., for defendants-appellants.

Lawrence E. Spong, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., William G. Otis, Asst. U.S. Atty., Brian M. O'Leary, Sp. Asst. U.S. Atty., Danielle N. DeFranco, on brief), Alexandria, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, and HALL and WILKINS, Circuit Judges.

ERVIN, Circuit Judge:

Ray Thomas was convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a), of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and of possession with intent to distribute in excess of 50 grams of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1). Judge James C. Cacheris sentenced Thomas to 110 months in prison for each cocaine offense, and to 120 months for possession with intent to distribute crack. All sentences were to be served concurrently.

At an arraignment before Chief Judge Albert V. Bryan, Jr. of the Eastern District of Virginia at Alexandria, Wayne Graham Mason pleaded guilty to possession with intent to distribute over 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Judge Bryan sentenced Mason to 120 months imprisonment.

Both Thomas and Mason appeal their respective sentences for the crack violations. Thomas also appeals his conspiracy conviction. These cases were consolidated for purposes of this appeal. Finding no merit to the defendants' arguments, we affirm.

## I.

Both of the defendants in this case were stopped by members of the Drug Enforcement Agency ("DEA") task force at Washington National Airport. Detective Floyd Johnston and his partner Detective Grimes stopped Ray Thomas and Rodney Battle, a man with whom Thomas was travelling, on November 7, 1988. Detective Johnston requested and received permission to search Thomas and found cocaine taped to his leg. Detective Grimes searched Battle and found 600 small plastic vials in the inside pockets of his jacket. These vials are of the type commonly used to distribute narcotics.

Mason was stopped at the Washington National Airport on December 8, 1988. DEA agents found him in possession of over 50 grams of crack. At an arraignment, Mason pled guilty to charges of possession with intent to distribute crack. Chief Judge Albert V. Bryan sentenced Mason to the minimum term of imprisonment for the offense which is ten years.

## II.

On appeal, both Thomas and Mason argue that the mandatory minimum sentence imposed by Congress for their cocaine base offenses is unconstitutional because it violates the Eighth Amendment and because it is irrational.

Specifically, the defendants argue that the penalty structure in 21 U.S.C. § 841(b)(1)(A)(iii) for offenses involving crack violates the Eighth Amendment because it is disproportionately harsh in comparison to the penalty for offenses involving cocaine hydrochloride (cocaine powder). They rely on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), a case in which the Supreme Court held that South Dakota could not sentence a habitual offender under a recidivist statute to life

imprisonment without possibility of parole where the principal offense was uttering a "no account" check for $100, and each of the prior offenses were nonviolent minor felonies.

In order to understand the Supreme Court's approach to Eighth Amendment challenges to prison sentences, we start with *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In *Rummel,* the Court upheld a life sentence imposed under a Texas recidivist statute which provided for a mandatory life sentence upon conviction of a third felony. The defendant in that case was convicted of fraudulent use of a credit card, of passing a forged check, and finally with obtaining money by false pretenses. *Id.* at 272, 100 S.Ct. at 1138.

In *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam), the Supreme Court reversed an *en banc* decision of this court in which we found that two consecutive 20–year sentences for convictions of possession and distribution of nine ounces of marijuana were unconstitutional. In its opinion, the *Davis* Court emphasized that courts "should be 'reluctant to review legislatively mandated terms of imprisonment.'" *Id.* at 374, 102 S.Ct. at 705 (quoting *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138).

In *Solem,* the Supreme Court, for the first time, declared a felony prison sentence disproportionate to the crime committed. 463 U.S. at 288, 103 S.Ct. at 3008. The Court, however, did not overrule *Rummel* and *Davis,* but rather reminded us that "'[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare.'" *Id.* at 289, 103 S.Ct. at 3009 (quoting *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138). The Court distinguished *Rummel* on the facts, noting that the defendant in *Rummel* was eligible for parole, while Helm "was sentenced to life with no possibility of parole." 463 U.S. at 303 n. 32, 103 S.Ct. at 3016–3017 n. 32.

This court has been presented with several proportionality challenges since the Supreme Court's decision in *Solem.* We determined that "*Solem* requires an exten-

sive proportionality analysis only in those cases involving life sentences without parole." *United States v. Rhodes,* 779 F.2d 1019, 1028 (4th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); *see also United States v. Guglielmi,* 819 F.2d 451 (4th Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988); *United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988).

Neither Thomas nor Mason has been sentenced to life imprisonment without possibility of parole. As in *Rhodes,* we thus find that the sentences imposed in this case do not require an extended proportionality analysis. After reviewing the sentences we find that they are not disproportionate to the crimes committed. The crimes the appellants committed are serious felonies which have serious effects on society as a whole. Given the substantial deference we must accord to Congress, we find that the mandatory 10–year sentence is within constitutional limits.

### III.

Thomas and Mason also argue that the penalty structure for crack offenses as provided in 21 U.S.C. § 841(b) lacks a rational relationship to a legitimate state end and thus offends the Equal Protection Clause as incorporated by the Fifth Amendment's Due Process Clause.

As noted by the Eleventh Circuit, 21 U.S.C. § 841(b) does not discriminate on the basis of a suspect classification or the exercise of a fundamental right, and thus does not require heightened scrutiny. *See United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988). In reviewing a sentence challenged on equal protection grounds, we ask whether "the legislature rationally could have decided that the classification would further the statutory purpose." *United States v. Richards,* 737 F.2d 1307, 1310 (4th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). We find that Congress could rationally have concluded that distribution of cocaine base is a greater menace to society than distribution of cocaine powder and warranted greater penalties because it is less ex-

pensive and, therefore, more accessible, because it is considered more addictive than cocaine powder and because it is specifically targeted toward youth. *See United States v. Collado–Gomez*, 834 F.2d 280, 281 (2d Cir.1987). (Congress provided enhanced penalties to single out particularly insidious drug transactions), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988).

### IV.

■■■■ Thomas argues that his conspiracy conviction must be reversed because his co-defendant and alleged co-conspirator, Battle, was acquitted. Thomas claims that under the common law "rule of consistency" as stated in *Williams v. United States*, 282 F. 481, 484 (4th Cir.1922), he cannot be convicted of conspiracy where his co-conspirator is found innocent in the same trial.

Thomas' argument fails because the Supreme Court has made it clear that a defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count. *See United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Court held that a defendant could be convicted of maintaining a common nuisance by keeping intoxicating liquor for sale at a specified place even though a jury found the defendant not guilty of unlawful possession of intoxicating liquor and unlawful sale of such liquor. The Court stated that "consistency in the verdict is not necessary." 284 U.S. at 393, 52 S.Ct. at 190. And, in *Standefer v. United States*, 447 U.S. 10, 20, 100 S.Ct. 1999, 2006, 64 L.Ed.2d 689 (1980), the Court upheld the conviction of a defendant for aiding and abetting a revenue official in accepting compensation in addition to that authorized by law, even though the principal, the revenue agent, was acquitted in a separate trial. In *United States v. Powell*, the most recent of the Supreme Court cases on this issue, the jury found the defendant guilty of multiple counts of using the telephone to facilitate a conspiracy, but not guilty of conspiracy to distribute cocaine, and not guilty of possession with intent to distribute cocaine. The

Court recognized the obvious inconsistency in outcomes but held that a defendant convicted by a jury on one count could not attack his conviction because it was inconsistent with the jury's verdict of acquittal on another count. 469 U.S. at 62–64, 105 S.Ct. at 475–476.

Thomas argues that *Dunn, Standefer*, and *Powell* do not apply in cases in which a sole co-conspirator is acquitted. We disagree. Because of the reasoning provided by the Supreme Court we are forced to find otherwise. According to the Supreme Court, inconsistent verdicts

> should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Powell*, 469 U.S. at 65, 105 S.Ct. at 476. This explanation applies equally as much to this case as to *Powell*. *See United States v. Andrews*, 850 F.2d 1557, 1561 (11th Cir. 1988) (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."); *United States v. Valles–Valencia*, 823 F.2d 381, 382 (9th Cir.1987) ("the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act"); *Government of the Virgin Islands v. Hoheb*, 777 F.2d 138, 143 (3d Cir.1985) (Garth, J., concurring) ("*Standefer* and *Powell* have undercut the common law 'rule of consistency'"). Criminal defendants are "afforded protection against jury irrationality or error by independent review of the sufficiency of the evidence." *Andrews*, 850 F.2d at 1562. Enough evidence exists of a conspiracy between Battle and Thomas to uphold the jury's verdict against Thomas. We thus reject Thomas' argument that his conviction should be overturned because Battle was acquitted.

### V.

■■■■ Thomas also argues that the evidence used against him at trial was secured

by means of an illegal search. He argues that he was coerced, and that his consent to the search was thus involuntary.

The district court found that Thomas consented to the search. Officer Johnston testified that he approached Thomas, identified himself as a DEA agent, and asked if he could search him. In response, Thomas grasped the bottom of his coat and extended his arms. Thomas presents a different story.

The determination of whether Thomas' liberty was restrained at the time he consented to be searched is a question of fact. *See, e.g., United States v. Gooding*, 695 F.2d 78, 82 (4th Cir.1982); *United States v. Black*, 675 F.2d 129, 134 (7th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). The lower court finding of consent will thus not be overturned unless it is clearly erroneous. Because the evidence in the record supports the district court's finding, we hold that its conclusions are not clearly erroneous and therefore affirm.

AFFIRMED.